**BESHADA FARNESE LLP**
Peter J. Farnese (SBN 251204)
pjf@bfllplaw.com
700 S. Flower St., Suite 1000
Los Angeles, California 90017
Telephone:   310-356-4668
Facsimile:    310-388-1232

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATALIE LINARTE, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>          v.<br><br>HB USA HOLDINGS INC., and DOES 1-10, Inclusive,<br><br>                    Defendants. | CASE NO.  2:20-cv-09748<br><br>Judge:<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR:**<br><br>1.  VIOLATION OF CAL. BUS. & PROF. § 17200, ET SEQ. (Unlawful, Unfair, and Fraudulent Prongs)<br><br>2.  VIOLATION OF CAL. BUS. & PROF. § 17500, ET SEQ. (False and Misleading Advertising)<br><br>3.  VIOLATION OF CAL. CIV. CODE § 1750, ET SEQ. (Consumers Legal Remedies Act)<br><br>4.  COMMON LAW FRAUD<br><br>5.  UNJUST ENRICHMENT |

Plaintiff Natalie Linarte (hereafter "Plaintiff"), individually and on behalf of all other similarly situated purchasers (hereafter the "Class") of the Huda Beauty's Neon Obsessions Neon Pink, Neon Orange, and Neon Green products (hereafter the "Products"), brings this consumer class action against HB USA Holdings, Inc. (hereafter "Defendant" or "Huda Beauty"), and Does 1 through 10, inclusive (sometimes collectively referred to herein as "Defendants") and alleges as follows:

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and Plaintiff, as well as most members of the proposed class, are citizens of states different from Defendant. This Court also has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

2.      Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because Plaintiff is a citizen of California and resides in this District, and because Plaintiff purchased the Products in this District. Moreover, Defendant is located in this District and distributed, advertised, and sold the Products, which are the subject of the present complaint, in this District.

## THE PARTIES

3.      Plaintiff is an individual residing in the State of California.  Plaintiff purchased the Products for personal use in California in during the Class Period.  In doing so, Plaintiff relied upon Defendant's advertising, packaging, labeling and other promotional materials, which were jointly prepared and approved by Defendants and their agents and disseminated through advertising media, social media, Defendant's website, and the internet, containing the misrepresentations, concealments and unlawful claims alleged herein.  Plaintiff would not have purchased the Products if she had known that that they were unlawful and were not approved for use in the eye area.

4.      Defendant HB USA Holdings, Inc. is a Delaware corporation with its

business address located at 10000 Washington Blvd., Culver City, California 90232. At times relevant to this Complaint, Defendant has advertised, marketed, and sold a variety of cosmetic products, including the Products at issue, to consumers throughout the United States and the State of California.  Defendant has sold the Products directly to consumers via the Internet through its own website, as well as Sephora.com, Jcpenney.com, and through Sephora retail stores throughout the United States, including in this District.

5.    Defendant transacts or has transacted business in this County and throughout the United States. Defendant, directly and through its agents, has substantial contacts with and receives substantial benefits and income from and through the State of California and this District.  On information and belief, Defendant's sole U.S. corporate office location and all its U.S. executives are located in Los Angeles within this District. On information and belief, all decisions regarding the Defendant's U.S. marketing, labeling and regulatory compliance of the Products were made in Los Angeles County.

## **FACTUAL ALLEGATIONS**

### **Defendant Huda Beauty**

6.    Defendant Huda Beauty was founded in 2013 by a sophisticated businesswoman named Huda Kattan.   Ms. Kattan built the Huda Beauty cosmetics line off of her popular beauty and makeup blog, Huda Beauty, where she would post makeup tutorials and tips.

7.    Ms. Kattan embraced the Instagram platform, noting "the exact month (October 2012) and phone model (iPhone 4) she had when she started her account. A couple of years later, she reached a million followers." https://www.nytimes.com/2017/03/20/fashion/is-huda-kattan-the-kim-kardashian-west-of-beauty-bloggers.html.

8.    Described as the "Kim Kardashian" of the beauty influencer economy,  Ms. Kattan has amassed over 47 million followers on Instagram alone, and is ranked #1 on

the "2017 Influencer Instagram Rich List", purported earning $18,000 for each post of sponsored content.

9. Ms. Kattan was selected as one of the "ten most powerful influencers in the world of beauty" by Forbes magazine. She was chosen as one of "The 25 Most Influential People on the Internet" by Time magazine in 2017.

10. With the success of her blog, Ms. Kattan launched the Huda Beauty cosmetics brand. Originating with a false lashes collection, Ms. Kattan successfully expanded the Huda Beauty brand to include lip liners, liquid matte lipsticks, and eye shadow palettes.

11. Based in Dubai, with an office in the U.K. and a U.S. office located in Los Angeles, Ms. Kattan has turned Huda Beauty is a truly global brand. The company's products are sold at beauty retailers around the world such as Sephora, Harrod's, Selfridges, Brown Thomas, Arnotts, Net-a-Porter, and Feel Unique.

12. In or about 2017, private equity firm TSG Consumer Partners invested approximately $200 million to acquire a minority stake in Huda Beauty in a deal that valued the company at $1.2 billion.

13. Defendant Huda Beauty has grown exponentially into a global powerhouse due to the burgeoning marketplace for "digital" brands—particularly those associated with social media "influencers" like Huda Kattan.

14. With the expansion of social media platforms, digital marketing channels have lowered barriers to entry into the beauty and personal care market, enabling the creation of digitally native, "direct-to-consumer" cosmetics brands, like Huda Beauty. These brands have disrupted the high-margin cosmetics industry that has long been dominated by large, billion-dollar corporations.

15. Compared with traditional paid, media-intensive campaigns, and costly brick-and-mortar distribution models, "direct-to-consumer" brands rely heavily on social media, requiring only a modest investment to create the appearance of an authentic consumer campaign that can be highly targeted to specific groups consumers

and loyal online follower of the brands.

16.    The internet enables digital brands to operate "asset light" by accessing consumers directly via online stores and outsourcing product development and manufacturing. In other words, each online post, comment, "like", and "retweet", performs the function of traditional advertising.

17.    Recently, the firm Launchmetrics analyzed the Huda Beauty internet and social media strategy to determine the brand's Media Impact Value ("MIV®"). MIV® is a proprietary algorithm developed by Launchmetrics to measure the impact of placements and mentions across different voices in the Fashion, Luxury, and Cosmetics industry.

18.    According to Launchmetrics, Huda Beauty uses a sophisticated strategy of posts, user content, public relations/press, and influencer promotion: "The brand utilizes their Instagram channel in a multi-faceted way, sharing user-generated content, insider beauty tips from Huda herself, as well as memes and press shoutouts around three to five times a day. On their channel, they also invest heavily in video content, which receives a 38% higher engagement rate than static posts, whether it be through Instagram stories, or on the main feed." https://www.launchmetrics.com/resources/blog/huda-beauty-digital-strategy.

19.    Analyzing the month of June 2019, Launchmetrics concluded the staggering amount of MIV that Defendant achieves: "Huda Beauty generated a total MIV® of $54.4M in the month of June – with a $52M share of this coming from social media alone."

**The "Neon" Eyeshadow Trend**

20.    Because Huda Beauty is a nimble, digital brand, it can seize upon seasonal trends. In the spring and summer of 2019, a neon colors trend swept through the fashion and beauty industries.

21.    In a July 2019 article, the website *Stylist* noted that "neon is the buzzword of the summer…. From acid green and bright-than-sunshine yellow to fluorescent pink

and blazing orange; bright and bold shades have dominated Spring/Summer runways and, consequently, our wardrobes. Now, the cheerful neon trend is trickling into our beauty routines." https://www.stylist.co.uk/beauty/neon-eyeshadow-palette-colourful-eye-makeup-looks-to-try-shop-online/279001.

22.     According to *Stylist*, Pinterest reported that "searches for 'neon eyeshadow' are up a staggering 824% year-on-year." *Id*.

23.     In an effort to take advantage of the neon trend, in or about May 2019, Huda Beauty launched its "Neon Obsessions" colors as part of its popular "Obsessions" line of eyeshadow products.

24.     In a June 11, 2019 post on its website, Defendant called neon colors "The Dopest Eyeshadow Trend Of 2019".   Defendant specifically noted that its "Neon Obsessions" products were for the "Eyes":



## The Dopest Eyeshadow Trend Of 2019

**EYES**

by HB Team | Tue, 11 Jun 2019

When we said that neon was going to dominate 2019, we weren't lying. We've literally been wearing neon from head to toe non-stop, including our makeup (obviously). And our latest Neon Obsessions Palettes are the easiest way to ride the neon wave. Okay, so we realize that we may be a little biased, but the colors are SO dope and the pigment payoff is next level. Plus, you can create so many different looks with just one palette.

If you love the neon trend but are a little unsure of how to wear it, we've got all the tips and some serious inspo from our fave beauty Instagrammers. These looks are poppin'...

CLASS ACTION COMPLAINT

*See* Exhibit A.

25.    For the Neon Obsessions products, Huda Beauty deployed its sophisticated internet marketing strategy to promote the product on social media and its website, as well as rolling out the product worldwide in retail stores, including Sephora stores nationwide.

26.    Huda Beauty promoted the Products using its own content, including tutorials and tips from Ms. Kattan:



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



26    27.    Ms. Kattan demonstrated, in her popular tutorial videos that the Products

27    should be applied to the eye area:

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16



17
18
19
20
21
22
23
24
25
26
27
28



CLASS ACTION COMPLAINT





CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



28.    Defendant featured the products on its website in various articles, each time referencing the Products as "eyeshadows" or demonstrating that they are used in the eye area. *See* Exhibits B - D.

29.    Ms. Kattan also spoke about using the products in the eye area in "press" engagements.  For instance, she told *Allure* that:

Kattan advises taking a dense shadow brush to any of the palettes' matte pigments and fill in atop the concealer. "It sounds like a lot more work than it is, but I

promise it doesn't take long, and it really draws so much attention to the eyes." (If you don't believe her, just check out the short Instagram tutorial she did for the look.)…

Kattan promises that these palettes are perfect for neon novices. "If you're worried about color intensity, I would say to start with a light amount of product because you can always build up the pigments from there," Kattan explains. "With these bright neon colors, you can't really go wrong with a simple monochromatic color wash on the lids." She advises using your finger or a shadow brush to apply the shadow starting from the inner eye and blending the pigment to the outer part of the eye to cover the entire lid. "The further out you blend the color, the more dramatic the look."

*See* Exhibit E (emphasis added).

30.    Defendant listed the Products in the "Eye" section of its webstore along with the other Obsessions eyeshadow palettes. *See* Exhibit F.   The design of the Products' packaging is the same as the form, shape, and format as its other Obsessions eyeshadow products. *Id.*

31.    Defendant's retail partners, Sephora and JC Penney, also promoted the Products as "eye" products on their respective ecommerce sites and in store:



32.    The JC Penney website contained language related to eye area use, which on information and belief, was specifically provided by Huda Beauty, calling the various shades "Eyeshadows" and the following "suggested" use:

**Suggested Usage:-**Blend the shadows seamlessly together, using darker shades in the crease, and lighter hues along the brow bone and inner corners of the eye. - Build strong looks, using the color on lips and cheeks -Use a smudge or liner

brush, to create <u>bright liner looks either on the eye lid, or along lower lash line</u>. - With your ring finger or with setting spray on an eyeshadow brush, apply the shimmer or metallic shades <u>to the center of your eyelid</u> for pop of color. -Huda's tip: Apply Overachiever concealer in shade Whipped Cream as a base to amplify pigment and intensity your looks.-

*See* Exhibit G (emphasis added).

33. Likewise, Sephora specifically sought to link the social media attention for the Products by featuring the Products in its "As Seen on Instagram" page. *See* Exhibit H.

34. The Sephora website also featured the Products in the "eye" section. *See* Exhibit I.

**Huda Beauty's "Neon Obsessions" Products Are Intended to Be Used In The Eye Area**

35. A cosmetic's "intended use" under the federal Food, Drug and Cosmetic Act (and analogous provisions under the California Sherman law), is determined by the seller's <u>objective</u> intent as "derived or inferred from labeling, promotional material, advertising, *or any other relevant source*." *See Allergan, Inc. v. Athena Cosmetics, Inc.*, 738 F.3d 1350, 1357 (Fed. Cir. 2013) *cert. denied,* 135 S.Ct. 2886 (2015)(emphasis added) (citing *United States v. Storage Spaces Designated Nos. "8" & "49",* 777 F.2d 1363, 1366 (9th Cir. 1985)). Courts have considered a variety of factors, including pricing, internal communications, method of application, formulation, advertising claims, prior labeling, evidence of consumer use, among others, to determine the intended use of cosmetics. *Id.* at 1356-58.

36. As demonstrated above, marketing claims, product and packaging design, placement on store shelves and internet stores, and evidence of consumer use demonstrate that Huda Beauty's intended use of the neon Products is that they are to be used as eyeshadows applied to the eye area.[1]

---

[1]   Huda Beauty's sale of the Products throughout the world confirms their intended use is the eye area. *See* Exhibit J, Harrods website (Feb. 24, 2020)

**The Products Contain Color Additives Not Approved By the FDA For the "Eye Area"**

37.    Color additives for cosmetics are tightly regulated under the California Health & Safety Code and federal law.  California state law incorporates the FDA's color additive regulations.

38.    On its website, FDA provides guidance for the cosmetics industry: "Color additives are subject to a strict system of approval under U.S. law [Federal Food, Drug, and Cosmetic Act (FD&C Act), sec. 721; 21 U.S.C. 379e]. Except in the case of coal-tar hair dyes, failure to meet U.S. color additive requirements causes a cosmetic to be adulterated    [FD&C    Act,    sec.    601(e);    21    U.S.    Code    361(e)]." https://www.fda.gov/industry/color-additives-specific-products/color-additives-and-cosmetics-fact-sheet.

39.    "No matter whether a particular color is subject to certification or exempt from certification, U.S. law prohibits its use in cosmetics (or any other FDA-regulated product) unless it is approved specifically for the intended use [FD&C Act, sec. 721(a)(1)(A); 21 U.S.C. 379e(a)(1)(A)]." *Id.*

40.    FDA advises the industry that: "You may not use a color additive in the area of the eye unless the regulation for that additive specifically permits such use [21 CFR 70.5(a)]." [2]

41.    Fluorescent/neon color are specifically prohibited for use in the area of the eye: "These are the make-you-blink colors sometimes called "neon" or "day-glow." There are eight fluorescent colors approved for cosmetics, and like other colors, there are limits on how they may be used. None of them are allowed for use near the eyes. (Check the Summary of Color Additives again.) These are their names: D&C Orange

---

[2]    *See also* FDA, Color Additive Permitted for Use in Cosmetics, https://www.fda.gov/cosmetics/cosmetic-ingredient-names/color-additives-permitted-use-cosmetics.

No. 5, No. 10, and No. 11; D&C Red No. 21, No. 22, No. 27 and No. 28; and D&C Yellow No. 7." https://www.fda.gov/cosmetics/cosmetic-products/novelty-makeup.

42.    The "area of the eye" includes: "the area enclosed within the circumference of the supra-orbital ridge and the infra-orbital ridge, including the eyebrow, the skin below the eyebrow, the eyelids and the eyelashes, and conjunctival sac of the eye, the eyeball, and the soft areolar tissue that lies within the perimeter of the infra-orbital ridge". *See* 21 CFR § 70.3(s).

43.    Huda Beauty's Neon Products contain color additives not approved for use in the area of the eye as follows:

a.    Neon Obsessions Neon Pink Palette contains Red 6 (CI 15850) in the Rose Matte, Hot Pink Matte, Bright Fuchsia Matte, Magenta Purple Matte, Lilac Matte shades;

b.    Neon Obsessions Neon Green Palette contains Yellow 10 (CI 47005), Red 6 (CI 15850), Red 22 (CI 45380), Red 28 (CI 45410) in the Fiery Orange Matte shade, as well as Yellow 10 (CI 47005), Red 22 (CI 45380), Red 28 (CI 45410) in the Pink Matte shade; and

c.    Neon Obsessions Neon Orange Palette contains Yellow 10 (CI 47005), Red 6 (CI 15850), Red 22 (CI 45380), Red 28 (CI 45410) in the Fiery Orange Matte shade as Yellow 10 (CI 47005), Red 22 (CI 45380), Red 28 (CI 45410) in the Pink Matte shade.

**Huda Beauty Conceals Material Information From Consumers**

44.    Huda Beauty is aware that the color additives used in the Products are not approved for use in the eye area.  But, Huda Beauty chose to obfuscate and conceal that information from consumers in an apparent effort to unlawfully market the products as eyeshadows in the U.S. and circumvent federal and California laws and regulations.

45.    First, despite manufacturing and selling the Products in the same form, container, and packaging as its other "Obsessions" eyeshadow products, Huda Beauty discreetly omitted the word "eyeshadow" from the product name, instead referring to

the Products as "palettes" or "pressed pigment palettes".

46.  Second, in lieu of advising consumers in a clear and prominent manner, that the Products are not approved for use in the eye area, Huda Beauty chose to conceal this information from consumers, with only a "mouse print" disclaimer on a hidden inner page of the rear product label:





47. This is disclosure is the <u>only</u> such disclosure and the language did <u>not</u> appear in <u>any</u> Huda Beauty advertising, its website, its social media, nor on the Sephora or JC Penney websites or retail store displays.

48. Huda Beauty expects consumers to ignore its own affirmative advertisements and other promotional materials for the Products, and then, once the Product is in a consumer's hands, she or he must unwrap the outer plastic wrapper of the Product, and then peel the rear label sticker to reveal a disclaimer stating "not intended for the eye area".

49. Aside from being hidden on the inner panel, the fine print "not intended for the eye area" is not bolded and buried within other text. Moreover, the disclaimer fails to identify which shades in the palettes are not safe or approved to be applied to the eye area.

50. Remarkably, Huda Beauty's own advertising claims demonstrate that the "not intended" statement is false. Huda Beauty does, in fact, intend for the Products to be used in the eye area.

51.    Third, because the Products are wrapped, it is <u>not possible</u> for a consumer to view this disclaimer prior to purchase of the Product:







52.     Thus, whether a consumer purchased online or in the retail store, it was not possible to view the disclaimer before purchase.

53.     Regardless, the language Huda Beauty chose to use in the disclaimer, "not intended for the eye area", is misleading because 1) Huda Beauty's own marketing states that the Products are to be used in the eye area, and 2) the language misstates the relevant regulations which indicate that the Products are not "approved" for use in the eye area.

**Plaintiff's Purchase of the Product**

54.     Plaintiff purchased the Huda Beauty brand Pink Neon Obsessions and Green Neon Obsessions products in California on October 12, 2019 for $63.94, including tax, at a Sephora in JC Penney store located at 6000 S Hannum Ave, Culver City, California 90230.  Prior to purchasing the Products, Plaintiff saw, heard and relied upon packaging, labeling, advertisements, representations and statements made by Defendant, including advertisements showing the Products applied to the eye area and

the Products' placement in the retail store with other eye makeup products.

55.    Plaintiff, neither before, nor after purchasing the Products, saw or viewed any advisement that the Products were not approved for use in the eye area.  After purchasing the Products, Plaintiff applied the Products to her eye area, but experienced irritation and burning, which were exacerbated by the difficulty she encountered in removing the Products from her skin.

56.    Plaintiff has suffered injury in fact and lost money as a result of Defendant's conduct described herein.  Plaintiff would not have purchased the Products had she known that the Products were unlawful to sell and/or contained color additives not approved for use on the eye area.

57.    In accordance with pre-suit notice requirements of the CLRA, on December 17, 2019, Plaintiff issued a pre-suit demand for corrective action under Cal. Civil Code section 1782 (a) to Huda Beauty, notifying the company of its violations of California law.  *See* Exhibit K. Defendant responded on January 16, 2020, denying Plaintiff's allegations.  Thereafter over the next several months, the parties engaged in an extensive back and forth on Plaintiff and the Class's claims as required by the CLRA pre-suit notification process.  The parties were unable to resolve their disputes and Plaintiff was required to file this action.

## CLASS ACTION ALLEGATIONS

58.    L.R. 23-2.2(a) Class Definition: Plaintiff brings this class action on behalf of herself, and as a class action on behalf of the following putative classes (the "Class"):

**Nationwide Class**
All individual residents of the United States who purchased the Products through the date of class certification.    Excluded from the Class are: (1) Defendants and all directors, officers, employees, partners, principals, shareholders and agents of Defendants; (2) Any currently sitting United States District Court Judge or Justice, and the current spouse and all other persons within the third-degree of consanguinity to such judge/justice; and (3) Class Counsel.

**California  Sub-Class**
All individual residents of the State of California who purchased the Products

through the date of class certification.    Excluded from the Class are: (1) Defendants and all directors, officers, employees, partners, principals, shareholders and agents of Defendants; (2) Any currently sitting United States District Court Judge or Justice, and the current spouse and all other persons within the third-degree of consanguinity to such judge/justice; and (3) Class Counsel.

Plaintiff reserves the right to amend the Class definitions if further investigation and discovery indicates that the Class definitions should be narrowed, expanded, or otherwise modified.

59.    <u>L.R. 23-2.2(b) Numerosity and Ascertainability</u>: Plaintiff does not know the exact number of members of the putative classes.    Due to Plaintiff's initial investigation and information exchanged by the parties as part of the CLRA pre-suit notification process, however, Plaintiff is informed and believes that the total number of Class members is at least in the tens of thousands, and that members of the Class are numerous and geographically dispersed throughout the United States and California. While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery, including Defendants' records, either manually or through computerized searches.

60.    <u>L.R. 23-2.2(c) & (e) Typicality and Adequacy</u>: Plaintiff's claims are typical of those of the proposed Class, and Plaintiff will fairly and adequately represent and protect the interests of the proposed Class.    Plaintiff does not have any interests that are antagonistic to those of the proposed Class.    Plaintiff has retained counsel competent and experienced in the prosecution of this type of litigation.

61.    <u>L.R. 23-2.2(d) Commonality</u>: The questions of law and fact common to the Class members, some of which are set out below, predominate over any questions affecting only individual Class members:

    a.  whether Defendants claimed that the Products may be used in the eye area;

    b.  whether the Products contain color additives not approved by the FDA for use in the eye area;

c.  whether the surrounding facts and circumstances demonstrate that the intended use of the Products is to be applied in the eye area;

d.  whether Defendant's eye area advertising along with the concealment of certain information regarding Defendants' Products, including the unapproved color additives in the Products is material to consumers;

e.  whether Defendants' advertising and marketing claims set forth above are unlawful, untrue, or are misleading, or reasonably likely to deceive;

f.  whether Defendants' conduct is fraudulent and/or violates public policy;

g.  whether Defendants' engaged in unfair, unlawful and/or fraudulent business practices in marketing and distributing the Products;

h.  whether the Products are adulterated and/or misbranded under the California Health & Safety Code and identical federal law;

i.  whether Defendants' knew or should have known that the representations were false;

j.  whether Defendants engaged in false advertising with respect to the Products;

k.  whether Defendants' knowingly concealed or misrepresented material facts for the purpose of inducing consumers into spending money on the Products;

l.  whether Defendants' representations, concealments and non-disclosures concerning the Products are likely to deceive the consumer;

m. whether Defendants' representations, concealments and non-disclosures concerning the Products violate the CLRA, FAL, UCL, and/or the common law;

n.  whether Defendants should be permanently enjoined from making the claims at issue;  and

o.  whether Plaintiff and the Class are entitled to restitution and damages.

62.  L.R. 23-2.2(f) Predominance and Superiority: Common questions, some of

which are set out above, predominate over any questions affecting only individual Class members.  A class action is the superior method for the fair and just adjudication of this controversy.   The expense and burden of individual suits makes it impossible and impracticable for members of the proposed Class to prosecute their claims individually and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

63.   L.R. 23-2.2(f) Manageability: The trial and litigation of Plaintiff's and the proposed Class's claims are manageable.  Defendants have acted and refused to act on grounds generally applicable to the Class, making appropriate final injunctive relief and declaratory relief with respect to the Class as a whole.

64.   L.R. 23-2.2(g) Notice: If necessary, notice of this action may be affected to the proposed Class through publication in a manner authorized in the California Rules of Court, Civil Code, and/or the Federal Rules of Civil Procedure.  Also, Class members may be notified of the pendency of this action by mail and/or email, through the distribution records of Defendant, third party retailers, and vendors.

## FIRST CAUSE OF ACTION

### VIOLATION OF UNFAIR COMPETITION LAW
#### (CAL. BUS. & PROF. CODE § 17200, *et seq.*)
### (Unlawful, Unfair, and Fraudulent Prongs of the Act)

65.   Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

66.   Plaintiff brings this claim individually and on behalf of the proposed Class against Defendants.

67.   California Business and Professions Code § 17200 prohibits any "any

unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising". For the reasons discussed above, Defendants have engaged in unlawful, unfair, and deceptive acts, and untrue and misleading advertising in violation of California Business & Professions Code §17200.

68.    As alleged herein, Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact and has lost money or property as a result of Defendant's actions. Specifically, Plaintiff purchased the Products for her own personal use.  In so doing, Plaintiff relied upon the representations referenced above. Plaintiff would not have purchased the Products had she known that the Products were unlawful to sell in California and the United States, and that the Products are not approved for use in the eye area.

69.    **Unlawful Business Practices:** The actions of Defendants, as alleged herein, constitute illegal and unlawful practices committed in violation of the Business & Professions Code §17200.

70.    As alleged herein, Defendants have violated provisions of the California Health & Safety Code, including, without limitation, the following sections: § 110090, 111665, 111695, 111700, 111710, among other provisions.

71.    In addition, Defendants' have committed unlawful business practices by, *inter alia*, making the representations and omissions of material facts, as set forth more fully herein, and violating California Civil Code §§ 1572, 1573, 1709, 1710, 1711, 1770, Business & Professions Code § 17500, et seq., Civil Code §1750, and the common law.

72.    In addition, Defendants have unlawfully manufactured, advertised, and disseminated false advertisements of the Products, and that the product advertising and packaging contain false or misleading statements about the Products in violation of Bus. & Prof. Code § 17500, Civil Code §1750, which govern Defendant's conduct.

73.    Plaintiff and the Class reserve the right to allege other violations of law which constitute other unlawful business acts or practices. Such conduct is ongoing and

1  continues to this date.

2      74.    **Unfair Business Practices**: California Business & Professions Code §

3  17200 also prohibits any "unfair ... business act or practice."

4      75.    Defendants' acts, omissions, misrepresentations, practices and non-

5  disclosures as alleged herein also constitute "unfair" business acts and practices within

6  the meaning of Business & Professions Code § 17200 *et seq*. in that its conduct is

7  substantially injurious to consumers, offends public policy, and is immoral, unethical,

8  oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged

9  benefits attributable to such conduct.

10     76.    There were reasonably available alternatives to further Defendants'

11  legitimate business interests, other than the conduct described herein.

12     77.    **Fraudulent Business Practices**: California Business & Professions Code §

13  17200 also prohibits any "fraudulent business act or practice."

14     78.    Defendants' claims, nondisclosures and misleading statements with respect

15  to the Products, as more fully set forth above, were false, misleading and/or likely to

16  deceive the consuming public within the meaning of Business & Professions Code §

17  17200.

18     79.    Defendants' conduct caused substantial injury to Plaintiff and the other

19  Class members. Plaintiff has suffered injury in fact and has lost money as a result of

20  Defendants' unfair conduct.

21     80.    Pursuant to section 17203 of the California Business & Professions Code,

22  Plaintiff and the Class seek an order of this court enjoining Defendants from continuing

23  to engage in unlawful, unfair, or deceptive business practices and any other act

24  prohibited by law, including, but not limited to: (a) selling, marketing, or advertising the

25  Products with false representations set forth above; (b) engaging in any of the illegal,

26  fraudulent, misleading, unlawful, unfair and/or deceptive conduct described herein; and

27  (c) engaging in any other conduct found by the Court to be illegal, fraudulent,

28  misleading, unlawful, unfair and/or deceptive conduct.

81.    In addition, Plaintiff requests that this Court enter such orders or judgments as may be necessary to restore to any person in interest any money which may have been acquired by means of such illegal practices as provided in Business & Professions Code § 17203, and for such other relief as set forth below.

82.    Plaintiff engaged counsel to prosecute this action and is entitled to recover costs and reasonable attorney's fees according to proof at trial.

## SECOND CAUSE OF ACTION

### FALSE AND MISLEADING ADVERTISING
### (CAL. BUS. & PROF. CODE § 17500, *et seq.*)

83.    Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

84.    Plaintiff brings this claim individually and on behalf of the proposed Class against Defendants.

85.    As alleged herein, Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact and has lost money or property as a result of Defendant's actions. Specifically, Plaintiff purchased the Products for her own personal use. In so doing, Plaintiff relied upon the representations referenced above. Plaintiff would not have purchased the Products had she known that the Products were unlawful to sell in California and the United States, and that the Products are not approved for use in the eye area.

86.    Defendants violated Business & Professions Code § 17500 by publicly disseminating false and misleading advertisements regarding the Products.

87.    Defendants' false and misleading advertisements were disseminated to increase the sales of the Products.

88.    Defendants knew or should have known that their advertisements for the Products were false and misleading and that those advertisements would induce consumers to purchase the Products. Such advertisements have deceived and are likely

to deceive the consuming public, in violation of Business & Professions Code § 17500.

89.    Furthermore, Defendants publicly disseminated the false and misleading advertisements as part of a plan or scheme and with the intent to sell unproven and ineffective products.

90.    Plaintiff and the members of the Class have suffered harm as a result of these violations of the FAL because they have incurred charges and/or paid monies for the Products that they otherwise would not have incurred or paid.

91.    Defendants are aware, or by the exercise of reasonable care should have been aware, that the representations (including, without limitation, the claim that the Products could be applied in the eye area when they are not approved for that intended use) were untrue or misleading and that such conduct is in violation of the current injunction.

92.    Plaintiff and the members of the Class have suffered injury in fact and have lost money as a result of Defendant's false representations and false advertising.

93.    Pursuant to Business & Professions Code § 17535, Plaintiff and the members of the putative Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ their practice of advertising the Products.

94.    Likewise, Plaintiff and the members of the putative Class seek an order requiring Defendant to disclose such misrepresentations, and additionally request an order awarding Plaintiff and other members of the putative class restitution of the money wrongfully acquired by Defendants by means of responsibility attached to Defendants' failure to disclose the existence and significance of said misrepresentations.

## **THIRD CAUSE OF ACTION**

### **VIOLATION OF CALIFORNIA LEGAL REMEDIES ACT**
### **(CAL. CIV. CODE § 1750 et seq.)**

79.    Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

80.    Plaintiff brings this claim individually and on behalf of the proposed Class against Defendants.

95.    Plaintiff is a consumer as defined by California Civil Code § 1761(d). The Products are a goods within the meaning of the Act.  Specifically, prior to the filing of this action, as alleged herein, Plaintiff purchased the Products for her own personal use. In so doing, Plaintiff relied upon the representations referenced above. Plaintiff would not have purchased the Products had she known that the Products were unlawful to sell in California and the United States, and that the Products are not approved for use in the eye area.

81.    Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact and has lost money or property as a result of Defendants' actions as set forth herein.

82.    On December 17, 2019, Plaintiff provided notice to Defendant as required by Civil Code §1782(a).  *See* Exhibit K.

83.    Plaintiff has concurrently filed the declaration of venue required by Civil Code §1780(d) with this complaint.

84.    Defendants have violated and continue to violate the CLRA by engaging in the following practices proscribed by California Civil Code §1770(a) in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of the Products:

§1770(a) (5) Representing that [The Product(s) have] ... characteristics, ... uses [or] benefits ... which [it does] not have ... .

§1770(a) (7) Representing that [the Product(s) are] of a particular standard, quality or grade ... if [it is] of another.

1770(a) (9)) "Advertising goods...with intent not to sell them as advertised"; and

1770(a) (16)Representing that the Products have been supplied "in accordance with a previous representation" when they have not.

85.    Defendants violated the CLRA by representing through its advertisements.

Packaging, and labeling of the Products as described above, when they knew, or should have known, that the representations and advertisements were false and misleading.

86.    Plaintiff and the members of the putative Class have each been directly and proximately injured by the conduct of Defendants, and such injury includes payment for units of the Products they purchased.

87.    Defendants' wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA. Pursuant to Civil Code § 1782(d), plaintiff and the Class seek a Court order enjoining the above-described wrongful acts and practices of Defendants along with any other conduct found by the Court to be illegal, fraudulent, misleading, unlawful, unfair and/or deceptive conduct.

88.    Plaintiff engaged counsel to prosecute this action and is entitled to recover costs and reasonable attorney's fees according to proof at trial.

## FOURTH CAUSE OF ACTION

### COMMON LAW FRAUD

89.    Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

90.    Plaintiff brings this claim individually and on behalf of the proposed Class against Defendants.

91.    Defendants represented, in a single, consistent and uniform manner, the alleged benefits and uses of the Products.

92.    Defendants' statements about the Products as set forth more fully above are false.

93.    Thus, Defendants knew that the representations set forth herein were false when such representations were made and/or made the representations recklessly and without regard for the truth.

94.    Plaintiff and the Class reasonably relied upon Defendants' representations in purchasing the Products.

95.    Defendants' misleading and fraudulent conduct was knowing, deliberate, wanton, willful, oppressive and undertaken in conscious disregard of, and with reckless indifference to, Plaintiff and members of the Class's interest, and otherwise of the character warranting the imposition of punitive damages pursuant to section 3294 of the Civil Code.

96.    Plaintiff and the Class suffered real economic losses and harm as a result of Defendants' intentional misrepresentations and active concealment, as set forth specifically herein.

97.    Plaintiff's and the Class's reliance on Defendants' representations were a substantial factor in causing the harm to Plaintiff and the Class.

## FIFTH CAUSE OF ACTION
### UNJUST ENRICHMENT

98.    Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

99.    Plaintiff brings this claim individually and on behalf of the proposed Class against Defendants.

100.    Plaintiff and members of the Class conferred a monetary benefit on Defendants. Defendants received and retained money by selling personal data collected from Plaintiff and the Class.

101.    This information was collected from Plaintiff and the Class without authorization and through deceptive business practices.

102.    Under principles of equity and good conscience, Defendants should not be permitted to retain the money obtained by selling information about Plaintiff and members of the Class, which Defendants have unjustly obtained as a result of their unlawful and deceitful actions.

103.    Accordingly, Plaintiff and the Class seek full disgorgement and restitution of any money Defendants have retained as a result of the unlawful and/or wrongful

1  conduct alleged herein.

2

3                              **PRAYER FOR RELIEF**

4         WHEREFORE, Plaintiff, on behalf of herself and as representative of all other

5  persons similarly situated, prays for judgment against Defendants, as follows:

6         1.     An order certifying that the action may be maintained as a Class Action;

7         2.     An order permanently enjoining Defendants from pursuing the policies,

8  acts, and practices complained of herein;

9         3.     An order requiring Defendants to pay restitution to Plaintiff and all

10 members of the Class;

11        4.     An order requiring Defendants to pay damages to Plaintiff and all members

12 of the Class;

13        5.     An order requiring Defendants to pay punitive damages to Plaintiff and all

14 members of the Class;

15        6.     For pre-judgment interest from the date of filing this suit;

16        7.     For reasonable attorneys' fees;

17        8.     Costs of this suit; and,

18        9.     Such other and further relief as the Court may deem necessary and

19 appropriate.

20

21 DATED: October 15, 2020              **BESHADA FARNESE, LLP**

22                                     By:    */s/Peter J. Farnese*

23                                            Peter J. Farnese

24                                     Attorneys for Plainitff

25

26

27

28

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues so triable.

DATED: October 15, 2020     **BESHADA FARNESE, LLP**

By:   */s/Peter J. Farnese*
       Peter J. Farnese

Attorneys for Plainitff